### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANN L. RUGGLES, an individual; and<br>ADRIENNE FEMALI, an individual, | ) ) ) | |
| Plaintiffs, | ) ) | No. 17 CV 5981 |
| v. | ) ) | |
| ANNETT HOLDINGS, INC. d//b/a TMC<br>Logistics, an Iowa corporation; PATRICK<br>BROWN, an individual; and ERIC NUZBACH,<br>an individual, | ) ) ) ) ) | JURY DEMANDED |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff Ann L. Ruggles ("Ann") and Adrienne Femali ("Adrienne") (collectively, "Plaintiffs"), by their undersigned attorneys, state as follows for their complaint against defendants Annett Holdings, Inc. d/b/a Annett - Logistics ("Annett - Logistics"), Patrick Brown ("Patrick"), and Eric Nuzbach ("Eric").

## Nature of Case

1.     Two female ex-employees of Annett - Logistics bring this lawsuit based on sexual harassment and related wrongdoing.

2.     The work environment in Annett - Logistics' Naperville, Illinois office (the "Office") involved daily, humiliating, and degrading verbal and physical sexual harassment of Plaintiffs and other women who worked there.  The conduct of various male Annett - Logistics employees included, but was not limited to: (a) making sexualized comments directly to Plaintiffs, and to other women in the Plaintiffs' presence, about sexual intercourse, oral sex,  masturbation, strippers, sexual conquests, and female clothing; (b) viewing pornographic material while making

1

sexual noises and comments; (c) pretending to masturbate while calling out names of female Annett - Logistics' employees; (d) grinding their hips against cubicle walls and chairs of female employees' work stations; and (e) physically touching and threatening to physically touch Plaintiffs' respective bodies.

3. The verbal and physical conduct perpetrated by male employees was known to Annett - Logistics. Despite its knowledge, Annett – Logistics did not take action to stop the sexual harassment prior to the end of Plaintiffs' respective employments. To the contrary, Annett – Logistics condoned and perpetuated the sexual harassment.

4. Plaintiffs assert the following claims: (I) violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, by Ann against Annett - Logistics; (II) violation of Title VII by Adrienne against Annett – Logistics; (III) retaliation claim by Ann against Annett – Logistics; (IV) retaliation claim by Adrienne against Annett – Logistics; (V) constructive discharge claim by Ann against Annett – Logistics; (VI) constructive discharge claim by Adrienne against Annett – Logistics; (VII) negligent supervision and training by Plaintiffs against Annett – Logistics; (VIII) intentional infliction of emotional distress claim by Ann against Annett – Logistics; (IX) intentional infliction of emotional distress claim by Ann against Patrick; (X) intentional infliction of emotional distress claim by Adrienne against Annett – Logistics; and (XI) intentional infliction of emotional distress claim by Adrienne against Eric.

## Jurisdiction and Venue

5. For the Title VII and retaliation claims, this Court has jurisdiction under 28 U.S.C. § 1331 because those claims arise under federal law and also under 28 U.S.C. § 1343 because those claims seek to protect civil rights. This Court has jurisdiction under 42 U.S.C. § 2000e-5(f)

because a portion of the unlawful employment practices described herein occurred in this judicial district. For Plaintiffs' Illinois law claims, this Court has jurisdiction under 28 U.S.C. § 1367 because they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

6. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial portion of the events giving rise to the claims herein occurred Naperville, Illinois, which is in this judicial district.

7. On May 10, 2017, Ann filed a charge of violation of Title VII with the U.S. Equal Employment Opportunity Commission ("EEOC"). The charge contained allegations substantially similar to the allegations herein.

8. On May 17, 20017, the EEOC issued a Notice Of Right To Sue to Ann. See Notice, **Exhibit A** hereto. On May 22, 2017, Ann received a copy of this Notice Of Right To Sue. This Complaint was filed within 90 days of Ann's receipt of the Notice of Right to Sue the EEOC issued to her.

9. On May 18, 2017, Adrienne filed a charge of violation of Title VII with the EEOC. The charge contained allegations substantially similar to the allegations herein.

10. On May 23, 20017, the EEOC issued a Notice Of Right To Sue to Adrienne. See Notice, **Exhibit B** hereto. On May 25, 2017, Adrienne received a copy of this Notice Of Right To Sue. This Complaint was filed within 90 days of Adrienne's receipt of the Notice of Right to Sue the EEOC issued to her.

**Parties**

11. Plaintiff Ann L. Ruggles is a female individual who is a United States citizen who

3

resides in Carole Stream, Illinois, which is within this judicial district.

12.     Plaintiff Adrienne Femali is a female individual who is a United States citizen who resides in Naperville, Illinois, which is within this judicial district.

13.     Defendant Annett Holdings, Inc. d/b/a Annett - Logistics is an Iowa corporation with its principal place of business in Des Moines, Iowa.  Annett - Logistics has an office in Naperville, Illinois, which is within this judicial district.  At all relevant times, Annett - Logistics was engaged in the logistics and trucking business throughout the U.S. and engaged in an industry affecting commerce within the meaning set forth in Title VII.

14.     On information and belief, Annett - Logistics employed over 2,750 employees for twenty or more calendar weeks during the current and preceding calendar year.

15.     Annett - Logistics is an employer as defined under Title VII, 42 U.S.C. § 2000e(b).

16.     Defendant Patrick Brown is a male individual who resides in Indiana.  At all relevant times, Brown was employed by Annett - Logistics and the manager in charge of the Office.

17.     Defendant Eric Nuzbach is a male individual who resides in this judicial district and is a citizen of Illinois.  At all relevant times, Eric was employed by Annett - Logistics at its Office and still works at Annett – Logistics.

## Background

### General

18.      At all relevant times during Plaintiffs' employment at Annett - Logistics, Patrick was a member of Annett - Logistics' management and Plaintiffs' direct manager and supervisor.

19.     The physical layout of the Office involved one room with approximately 24 cubicles.  The cubicle walls were approximately four feet tall.  Patrick worked in a cubicle in close

physical proximity to Ann and Adrienne.

20.     The Office has a separate kitchen, which is open to the work space.  Many cubicles in the Office have a line-of-sight into the kitchen and are close enough that conversations in the kitchen can be overheard.

21.     At all times relevant to this lawsuit, Patrick worked in a cubicle in the Office.  From his cubicle, Patrick was able to watch over and listen to the employees he supervised and managed. Many of the male employees who engaged in sexual harassment worked in cubicles contiguous, or in close proximity, to Patrick's cubicle. Thus, in addition to Patrick's own behavior, on information and belief, Patrick overheard or viewed most of the sexual harassment perpetrated against Plaintiffs in the Office.

22.     Robert Deniz ("Robert"), John Hinni ("John"), Brian Plass ("Brian P."), and Brian Schaeffer ("Brian S."), are all male individuals who worked in the Office during most of the times relevant to this lawsuit.


**<u>Ann</u>**

23.     On approximately August 1, 2016, Ann started her employment at Annett - Logistics in the Office.

24.     At all relevant times, Ann was an employee of Annett - Logistics as defined under Title VII, 42 U.S.C. § 2000e(f).

25.     At all relevant times during Ann's employment at Annett - Logistics, she satisfactorily performed her job duties.  Ann never received a negative job performance review from Annett - Logistics.

26.     Shortly after Ann began working at the Office and continuing through the date her

employment at Annett – Logistics ended, Patrick's directed inappropriate and unwelcome sexual conduct towards Ann. He focused an inordinate amount of his attention on Ann, which was different than the way he treated other employees. His behavior included but was not limited to the following: (a) intentionally physically brushed up against her when working on her computer, intentionally bumped her when they passed each other in the Office, and nudged her with his elbow; (b) pulled the handle on her chair and threw objects at her; (c) a few minutes after Ann went to the Office building's fitness room, Patrick followed when it was a time when Patrick did not usually go to the fitness room; (d) consistently and regularly took normal non-sexual workplace statements by Ann and twisted them into statements with sexual connotations and sexual innuendo; (e) on occasions when he was displeased with Ann, he threatened to hit her breast or buttocks, or throw her against the wall; and (f) beginning in September of 2016, he kicked her in the buttocks once or twice a week.

27.     In or about October of 2016, Patrick rearranged the cubicle seating in the Office and placed Ann next to his cubicle.

28.     During Ann's employment at Annett – Logistics, on a regular basis, Robert pretended to masturbate when he was in Ann's presence or her line of sight in the Office. Robert engaged in other sexually-themed conduct and conversations in Ann's presence in the Office.

29.     During a portion of Ann's employment at Annett – Logistics, on a regular basis, Brian S. pretended to masturbate when he was in Ann's presence or her line of sight in the Office. Brian S. engaged in other sexually-themed conduct and conversations in Ann's presence in the Office.

30.     During Ann's employment at Annett – Logistics, on a regular basis, Eric pretended to masturbate when he was in Ann's presence or her line of sight in the Office. Eric engaged in

6

other sexually-themed conduct and conversations in Ann's presence in the Office.

31.     During Ann's employment at Annett – Logistics, on a regular basis, Brian P. made vulgar sexual comments and sexual noises in the kitchen area when Ann was present or could hear the comments and noises.

32.     During Ann's employment at Annett – Logistics, on a weekly basis, John made sexual comments about her clothing and made demeaning sexual comments about Ann and other female employees.  John engaged in other sexually-themed conduct and conversations in Ann's presence in the Office.

33.     On numerous occasions throughout Ann's employment, Ann asked Patrick to stop his sexually-themed conduct directed at her.

34.     Beginning in approximately October of 2016, and on numerous occasions throughout the remainder of Ann's employment, while in Patrick's presence, Ann asked Robert, Eric, John, Brian P., and Brian S. to stop engaging in sexually-themed conduct and conversations. The sexually-themed conduct and conversations included but was not limited to talking about strippers, watching pornographic videos, listening to sexually explicit portions of the Howard Stern radio program, and pretending to masturbate.  For example, on April 20, Ann asked Brian P. to stop referring to his motorcycle as a "vagina magnet" in the Office.  Patrick heard Ann's request to Brian P. and took no action.

35.     Beginning in approximately October of 2016, and on numerous occasions throughout the remainder of Ann's employment, Ann asked Patrick to make Robert, John, Eric, Brian S., and Brian P. stop their sexually-themed conduct and conversations.

36.     At no time while in Ann's presence did Patrick tell Robert, Eric, John, Brian P. and Brian S. to stop their sexually-themed conduct and conversations.  On information and belief, at

no time outside of Ann's presence did Patrick tell Robert, Eric, John, Brian P. and Brian S. to stop their sexually-themed conduct and conversations. Their sexually-themed behavior continued throughout Ann's employment.

37.     On March 28, 2017, Ann sent Melissa Zollman ("Zollman"), who was the head of human resources for Annett - Logistics, an e-mail to report and complain about the severe sexual harassment she was experiencing at Annett – Logistics. In telephone conversation later that day, Ann told Zollman about additional severe sexual harassment she was experiencing.

38.     On approximately April 6, 2017, Ann sent Zollman another e-mail to update her on the conduct in the Office and ask Zollman to contact co-worker Sheila Morris ("Sheila") about the severe sexual harassment she was experiencing in the Office.

39.     After March 28, 2017, Zollman never responded in any manner to Ann's reporting of sexual harassment or to Ann's April 6 e-mail requesting follow-up from Zollman. Zollman did not call, talk face-to-face, e-mail, or write Ann prior to the end of Ann's employment at Annett – Logistics.

40.     On information and belief, Annett – Logistics did not investigate Ann's sexual harassment complaints while she was employed at Annett – Logistics.

41.     On information and belief, Annett – Logistics investigation into Ann's sexual harassment complaints was inexcusably delayed and was grossly inadequate because it was not thorough or conducted in accordance with standard sexual harassment investigation guidelines, including those the EEOC issued.

42.     On information and belief, at no time prior to the end of Ann's employment did Annett – Logistics take any disciplinary action related to sexual harassment against any of the male

8

perpetrators of sexual harassment in the Office.

43.    The sexually harassing conduct referenced above continued through the end of Ann's employment at Annett – Logistics.

**Adrienne**

44.    On approximately September 12, 2016, Adrienne started her employment at Annett - Logistics.

45.    At all relevant times, Adrienne was an employee of Annett - Logistics as defined under Title VII, 42 U.S.C. § 2000e(f).

46.    Eric began working with Adrienne in September of 2016.  Initially, they had adjacent cubicles.

47.    During Adrienne's employment, John said several times a week comments such as "I only like women" or "I only like working with women" and then would raise his eyebrows in a lecherous manner.  John also made sexually suggestive, unwelcomed comments about Adrienne's clothing.

48.    On many occasions, John called Adrienne a "freight whore," after which Patrick would immediately say, "cheaper than a five-dollar hooker."

49.    Within a few weeks of starting her employment with Annett – Logistics, Adrienne made it known to Patrick that she wanted the sexually-themed conduct and conversations of her various male colleagues to stop.  Patrick did not take effective corrective action to make the behavior stop.

50.    When Adrienne made a complaint to Patrick about John, Patrick did nothing to stop John's behavior or discipline him.  Patrick often would say, among other things, "he's old school,"

or point out that "he moves a lot of freight."

51.     While Adrienne and Patrick worked in adjacent cubes, Patrick often commented that he was "sweating like a whore in church."

52.     At a December 2016 potluck holiday party in the Office that Patrick attended, one of the dishes was vegetarian meatballs. In Adrienne's presence Eric, Robert and other male employees began a sexually-themed prolonged conversation about balls.  Adrienne retreated to her work cubicle to escape the conversation, but Eric subsequently crept up behind her and made a comment about eating balls.  Robert overheard Eric's comment to Adrienne, which prompted he and Eric to have a back-and-forth conversation in Adrienne's presence about oral sex.

53.     During Adrienne's employment, Eric and Robert regularly went to Adrienne's cubicle and held a conversation between the two of them regarding "sucking cock" and related sexually-themed phrases.

54.     On a regular basis, Eric made comments that Adrienne could hear about women sitting on his face.

55.     During Adrienne's employment, Eric engaged in sexually obsessive behavior toward Adrienne, despite Eric and Adrienne being married to other people.

56.     If Adrienne said or did something Eric did not like, he frequently called her a "bitch" or "slut."

57.     Eric texted Adrienne incessantly at all hours. She would only respond to work-related texts. In mid-September of 2016, Eric texted Adrienne at approximately 10:00 pm and asked her to meet him for a drink.  Despite her rejection of this offer, Eric kept insisting she needed to come out with him.

58.     In connection with a work training tip to Annett – Logistics' Iowa headquarters

during the first week of October of 2016, Eric obsessed over traveling with Adrienne. On information and belief, Eric wanted to spend time alone with Adrienne to continue his sexual obsession.

59.     While in Iowa for training, Eric continued his sexual obsession with Adrienne, which included but was not limited to the following:

       A.     Eric sent Adrienne text messages asking her if she was at the hotel. One evening after Adrienne was in her hotel room Eric texted her multiple times to meet him for a drink. Though Adrienne repeatedly refused, Eric kept insisting that she meet him for a drink.

       B.     On October 5, 2016, Adrienne took a car ride with Eric back to the hotel at which they were staying. Eric repeatedly tried to talk to Adrienne about whether she was sexting her husband. Adrienne turned up the radio to try to avoid the conversation. In the hotel parking lot, he drove in circles and made the sexually-themed statement to Adrienne that "you must be so wet." Adrienne demanded that Eric stop the car to let her out, but he refused, so when the car was slowed while turning, she opened the door and jumped out.

       C.     On the next morning, Eric saw Adrienne in the hallway and asked her to wait for him. Adrienne told him: "you're a creep!" "I'm sick of your shit" "don't text me, lose my number, don't call me, don't text me." He stepped toward her and said, "I'll text you whenever the fuck I want…shut the fuck up."

60.     On December 16, 2016, when it was Adrienne's last day working at Annett – Logistics, Eric came up behind Adrienne and put his arm around her neck. Adrienne did not give Eric permission to make this physical contact with her.

61.     Patrick was aware of Eric's sexually obsessive conduct toward Adrienne. Patrick

was present for a portion of Eric's sexually obsessive conduct directed at Adrienne. On information and belief, Patrick saw and/or heard a substantial portion of Eric's sexually obsessive conduct directed at Adrienne.

62. In approximately late October of 2016, Patrick moved Adrienne to a work cubicle that was not adjacent to Eric's cubicle. On information and belief, Patrick moved Adrienne to another cubicle because he was aware that Eric was engaging in sexually obsessive behavior towards Adrienne. With regard to the relocation, Patrick said, "I knew you were either going to quit or kill the old boy." Despite Patrick's knowledge, on information and belief, Patrick never reprimanded or wrote-up Eric for his conduct.

## COUNT I
### Sexual Harassment – Violation of Title VII, 42 U.S.C. § 2000e
### by Ann against Annett - Logistics

63. Ann restates and incorporates paragraphs 1 through 62 as though fully stated herein.

64. Under Title VII, "It shall be an unlawful employment practice for an employer— … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex …" 42 U.S.C. § 2000e-2(a)(1).

65. From the outset of Ann's employment at Annett - Logistics, she was subject to repeated and ongoing sexual harassment by Patrick, John, Robert, Brian P. and Brian S., who Annett - Logistics employed at the Office.

66. Based on the facts alleged above, Ann was subjected to sexual harassment during her employment at Annett - Logistics. The sexual harassment and hostile work environment continued until her employment at Annett - Logistics ended. Ann was subject to frequent verbal and physical conduct of a sexual nature. The verbal sexual harassment occurred on a daily basis

during the work week.

67.     The sexual harassment resulted in a hostile work environment for Ann and abusive work atmosphere for her at Annett - Logistics.

68.     The sexual harassment of Ann was based on her female gender.

69.     None of the sexual harassment of Ann was welcomed by her.  During Ann's employment, she repeatedly told Patrick, John, Robert, Brian P. and Brian S. to stop their sexually explicit conduct and language because it offended her and made her upset and unable to fully focus on work.  Despite Ann's pleas, the sexual harassment did not stop.

70.     The sexual harassment of Ann was both severe and pervasive to such an extent that it altered the conditions of her employment at Annett - Logistics.  The sexual harassment created an intimidating, oppressive hostile and offensive work environment, which affected her well-being.

71.     A portion of the sexual harassment was physically threatening.  All of the sexual harassment of Ann was humiliating, degrading, demeaning, and embarrassing.

72.     The sexual harassment of Ann interfered with the performance of her job duties at Annett - Logistics.  Additionally, the sexual harassment of Ann negatively affected Ann's psychological well-being.

73.     Ann repeatedly communicated to Patrick that his sexually explicit conduct was not welcomed by her and to stop engaging in the conduct.  At no time before April 27, 2017, when Ann's employment at Annett - Logistics ended, did Patrick stop his sexually harassing conduct in the Office.

74.     Ann told Robert, John, Eric, Brian P. and Brian S. that their respective above-referenced conduct was not welcomed by her and to stop engaging in the conduct.  At no time

13

before April 27, 2017 did any of them stop their respective sexually harassing conduct.

75.     Ann repeatedly complained about the foregoing harassing conduct. Neither Patrick nor any other member of Annett - Logistics' management attempted to stop the sexual harassment at the Office during Ann's employment.

76.     On March 28, 2017, Ann called Annett - Logistics' headquarters to report the sexual harassment to Zollman.

77.     Despite Ann's complaint to Zollman, the sexual harassment of Ann continued through the date on which her employment at Annett - Logistics ended.

78.     Annett - Logistics is liable for all of the sexually harassing conduct engaged in by Patrick, who was its manager, employee and agent.

79.     Annett - Logistics is also liable for the hostile work environment at the Office where Ann worked.

80.     Annett - Logistics was aware of the sexual harassment and hostile work environment by virtue of Patrick's knowledge of it, as well as Ann's reporting the harassment to Annett – Logistics' human resources department. Despite Annett – Logistics' knowledge, it failed to take measures to stop the sexual harassment and retaliation directed at Ann. Annett - Logistics failed to take measures to prevent the reoccurrence of the sexual harassment and retaliation directed at Ann. Annett – Logistic failed to take timely and effective measures to remedy the sexual harassment.

81.     Annett – Logistics failed to implement and enforce an effective policy prohibiting sexual harassment.

82.     The combination of Annett - Logistics' awareness of the problem and failure to

stop or remedy it constituted approval, ratification and perpetuation of the sexual harassment.

83.     As a direct and proximate result of the foregoing, Annett - Logistics caused Ann to be subject to unwelcomed sexual harassment that was severe and pervasive.

84.     As a direct and proximate result of the foregoing, Ann was substantially injured. Ann suffered severe emotional damages due directly to Annett - Logistics' unlawful conduct. As a direct and proximate result of the foregoing, Ann suffered humiliation, anxiety, mental anguish and depression.

85.     Pursuant to 42 U.S.C. § 2000e-5, Ann is entitled to her costs and reasonable attorney's fees incurred in connection with this claim.

86.     Annett – Logistics' conduct occurred with malice or reckless indifference to Ann's federal civil rights and rights under Illinois law. Annett - Logistics acted with knowledge that it was violating federal law.

87.     Annett – Logistics knew that Ann was a single mother during her employment, who depended upon her job at Annett – Logistics to support her children and herself.

**WHEREFORE**, Ann requests that this Court enter judgment in her favor and against Annett - Logistics and enter an order granting the following relief:

A.     Declaring the foregoing conduct to constitute sexual harassment in violation of Title VII;

B.     Enjoining and restraining these violations of Title VII, including permanently enjoining Annett – Logistics and its officers, managers and employees from

engaging in the unlawful practices and conduct described herein;

C.    Awarding compensatory damages;

D.    Awarding punitive damages;

E.    Awarding reasonable attorney's fees and costs incurred in pursuing this claim; and

F.    Granting such further relief as this Court deems just and proper.

## COUNT II
### Sexual Harassment – Violation of Title VII, 42 U.S.C. § 2000e
### by Adrienne against Annett - Logistics

88.    Adrienne restates and incorporates paragraphs 1 through 87 as though fully stated herein.

89.    Under Title VII, "It shall be an unlawful employment practice for an employer— … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex …" 42 U.S.C. § 2000e-2(a)(1).

90.    From the outset of Adrienne's employment at Annett - Logistics, she was subject to repeated and ongoing sexual harassment by Patrick, Eric and other male colleagues Annett - Logistics employed at the Office.  The sexual harassment continued until her employment at Annett - Logistics ended.

91.    By virtue of the facts alleged above, Adrienne was subjected to sexual harassment during her employment at Annett - Logistics.  Adrienne was subject to frequent verbal and physical conduct of a sexual nature.  The verbal sexual harassment occurred on a daily basis during the work week.

92.    The sexual harassment resulted in a hostile work environment for Adrienne and abusive work atmosphere for her at Annett - Logistics.

93.    The sexual harassment of Adrienne was based on her female gender.

94.    None of the sexual harassment of Adrienne was welcomed by her.  During Adrienne's employment, she repeatedly let it be known to Patrick, Eric and other male colleagues

that they needed to stop their sexually explicit conduct and language because it offended her and made her upset and unable to fully focus on work. Despite Adrienne's pleas, the sexual harassment did not stop.

95. The sexual harassment of Adrienne was both severe and pervasive to such an extent that it altered the conditions of her employment at Annett - Logistics. The sexual harassment created an intimidating, oppressive hostile and offensive work environment, which affected her well-being.

96. A portion of the sexual harassment was physically threatening. All of the sexual harassment of Adrienne was humiliating, degrading, demeaning, and embarrassing.

97. The sexual harassment of Adrienne interfered with the performance of her job duties at Annett - Logistics. Additionally, the sexual harassment of Adrienne negatively affected Adrienne's psychological well-being.

98. Adrienne repeatedly made it known to Patrick that sexually explicit conduct – including Eric's behavior – was not welcomed by her. At no time before Adrienne's employment at Annett - Logistics ended, did Patrick stop his sexually harassing conduct.

99. Adrienne told Robert, John, and Eric that their respective above-referenced conduct was not welcomed by her and to stop engaging in the conduct. At no time before Adrienne's employment ended did any of them stop their respective sexually harassing conduct.

100. Neither Patrick nor any other member of Annett - Logistics' management attempted to stop the sexual harassment at the Office during Adrienne's employment.

101. Despite Adrienne's complaints, the sexual harassment of Adrienne continued through the date on which her employment at Annett - Logistics ended.

102. Annett - Logistics is liable for all of the sexually harassing conduct engaged in by

Patrick, who was its manager, employee and agent.

103.    Annett - Logistics is also liable for the hostile work environment at the Office where Adrienne worked.

104.    Annett - Logistics was aware of the sexual harassment and hostile work environment by virtue of Patrick's knowledge of it. Despite Annett – Logistics' knowledge, it failed to take measures to stop the sexual harassment and retaliation directed at Adrienne. Annett - Logistics failed to take measures to prevent the reoccurrence of the sexual harassment and retaliation directed at Adrienne. Annett – Logistic failed to take timely and effective measures to remedy the sexual harassment.

105.    Annett – Logistics failed to implement and enforce an effective policy prohibiting sexual harassment.

106.    The combination of Annett - Logistics' awareness of the problem and failure to stop or remedy it constituted approval, ratification and perpetuation of the sexual harassment.

107.    As a direct and proximate result of the foregoing, Annett - Logistics caused Adrienne to be subject to unwelcomed sexual harassment that was severe and pervasive.

108.    As a direct and proximate result of the foregoing, Adrienne was substantially injured. Adrienne suffered severe emotional damages due directly to Annett - Logistics' unlawful conduct. As a direct and proximate result of the foregoing, Adrienne suffered humiliation, anxiety, mental anguish and depression.

109.    Pursuant to 42 U.S.C. § 2000e-5, Adrienne is entitled to her costs and reasonable attorney's fees incurred in connection with this claim.

110.    Annett – Logistics' conduct occurred with malice or reckless indifference to Adrienne's federal civil rights and rights under Illinois law. Annett - Logistics acted with

knowledge that it was violating federal law.

111.    Annett – Logistics knew that Adrienne was a working mother, who depended upon

her job at Annett – Logistics to support her children and herself.

**WHEREFORE**, Adrienne requests that this Court enter judgment in her favor and against

Annett - Logistics and enter an order granting the following relief:

A.    Declaring the foregoing conduct to constitute sexual harassment in violation of Title VII;

B.    Enjoining and restraining these violations of Title VII, including permanently enjoining Annett – Logistics and its officers, managers and employees from engaging in the unlawful practices and conduct described herein;

C.    Awarding compensatory damages;

D.    Awarding punitive damages;

E.    Awarding reasonable attorney's fees and costs incurred in pursuing this claim; and

F.    Granting such further relief as this Court deems just and proper.

## <u>COUNT III</u>
### Retaliation – Violation of Title VII, 42 U.S.C. § 2000e
### by Ann against Annett - Logistics

112.    Ann restates and incorporates paragraphs 1 through 111 as though fully stated

herein.

113.    Title VII states, in relevant part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or … to discriminate against any individual … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3.

114.    In response to Ann's complaints about sexual harassment to Patrick, Annett -

Logistics retaliated against Ann.  The retaliation included, but was not limited to: (a) continuing

to harass her in an effort to disrupt her work; (b) failing to provide coverage for her work orders

which resulted in loss of work performance measures and income; (c) requiring Ann to provide

detailed information about her customer database and each of her sales calls, when her male colleagues were not subject to any similar requirement; (d) wrote-up Ann on March 24, 2017 for being a few minutes late to work, when her male colleagues were frequently late for work, and left work early, but were not written-up; (e) given false customer leads (e.g., customers already assigned to other Annett - Logistics employees) by Patrick; (f) Patrick refusing to have work-related conversations with Ann; (g) Patrick excluding Ann from sales meetings to which she normally was invited to participate; (h) withheld from Ann sales commissions which she had earned; (i) Patrick constantly criticized Ann's work performance, while he frequently praised her male colleagues; and (j) Patrick requiring Ann to have his approval or colleague Jim Kelly's approval before she could post a freight rate.

115.    Annett – Logistics' desire to retaliate against Ann was the cause of the foregoing employment actions.

116.    As a result of the foregoing, Ann engaged in protected activity, including complaining on numerous occasions that she was being subject to unwelcomed sexual harassment.

117.    The sexual harassment directed at Ann became unbearable to such an extent that is resulted in April 2017 in Ann's constructive discharge from Annett - Logistics.

118.    The foregoing conduct constituted employment-related discrimination and retaliation against Ann by Annett - Logistics because she opposed the severe sexual harassment that was regularly occurring in the Office.

119.    As a direct and proximate result of Ann's complaints about sexual harassment, Annett – Logistics through its agents retaliated against Ann.

120.    As a direct and proximate result of Annett - Logistics' retaliation, Ann suffered substantial injuries, including but not limited to humiliation, anxiety, mental anguish and

depression.

121.     Pursuant to 42 U.S.C. § 2000e-5, Ann is entitled to her costs and reasonable attorney's fees incurred in connection with this claim.

122.     Annett – Logistics' conduct occurred with malice or reckless indifference to Ann's federal civil rights and rights under Illinois law. Annett - Logistics acted with knowledge that it was violating federal law.

**WHEREFORE**, Ann requests that this Court enter judgment in her favor and against Annett - Logistics and enter an order awarding the following relief:

A.     Declaring the foregoing conduct to constitute retaliation in violation of Title VII;
B.     Enjoining and restraining these violations of Title VII, including permanently enjoining Annett – Logistics and its officers, managers and employees from engaging in the unlawful practices and conduct described herein;
C.     Awarding compensatory damages;
D.     Awarding punitive damages;
E.     Awarding reasonable attorney's fees and costs incurred in pursuing this claim; and
F.     Granting such further relief as this Court deems just and proper.

<u>**COUNT IV**</u>
**Retaliation – Violation of Title VII, 42 U.S.C. § 2000e**
**by Adrienne against Annett – Logistics**

123.     Adrienne restates and incorporates paragraphs 1 through 122 as though fully stated herein.

124.     Title VII states, in relevant part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or … to discriminate against any individual … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3.

125.     In response to Adrienne's complaints about sexual harassment, Annett - Logistics

21

retaliated against Adrienne. The retaliation included, but was not limited to: (a) continuing to harass her in an effort to disrupt her work; and (b) reprimanded her for communicating with another Annett – Logistics' department when, on information and belief, no reprimands were issued to her male colleagues for similar conduct.

126. Annett – Logistics' desire to retaliate against Adrienne was the cause of the foregoing employment actions.

127. As a result of the foregoing, Adrienne engaged in protected activity, including complaining on numerous occasions that she was being subject to unwelcomed sexual harassment.

128. The sexual harassment directed at Adrienne became unbearable to such an extent that is resulted in December 2016 in Adrienne's constructive discharge from Annett - Logistics.

129. The foregoing conduct constituted employment-related discrimination and retaliation against Adrienne by Annett - Logistics because she opposed the severe sexual harassment that was regularly occurring in the Office.

130. As a direct and proximate result of Adrienne's complaints about sexual harassment, Annett – Logistics through its agents retaliated against Ann.

131. As a direct and proximate result of Annett - Logistics' retaliation, Adrienne suffered substantial injuries, including but not limited to humiliation, anxiety, mental anguish and depression. Due to the extreme conduct by Eric, Adrienne dreaded coming to work at Annett – Logistics.

132. Pursuant to 42 U.S.C. § 2000e-5, Adrienne is entitled to her costs and reasonable attorney's fees incurred in connection with this claim.

133. Annett – Logistics' conduct occurred with malice or reckless indifference to Adrienne's federal civil rights and rights under Illinois law. Annett - Logistics acted with

knowledge that it was violating federal law.

**WHEREFORE**, Adrienne requests that this Court enter judgment in her favor and against

Annett - Logistics and enter an order granting the following relief:

A.   Declaring the foregoing conduct to constitute retaliation in violation of Title VII;
B.   Enjoining and restraining these violations of Title VII, including permanently enjoining Annett – Logistics and its officers, managers and employees from engaging in the unlawful practices and conduct described herein;
C.   Awarding compensatory damages;
D.   Awarding punitive damages;
E.   Awarding reasonable attorney's fees and costs incurred in pursuing this claim; and
F.   Granting such further relief as this Court deems just and proper.

### COUNT V
### Constructive Discharge
### by Ann against Annett - Logistics

134.   Ann restates and incorporates paragraphs 1 through 122 as though fully stated herein.

135.   Although Ann repeatedly complained to Annett – Logistics about foregoing sexual harassment, it continued unabated.

136.   As a direct and proximate result of the foregoing sexual harassment, Ann resigned from Annett – Logistics.

137.   A reasonable person in Ann's position would have felt compelled to resign from employment at Annett – Logistics due the pervasive and severe sexual harassment taking place there.

138.   Ann's resignation from Annett – Logistics was the direct result of her gender and membership in a protected class.

139.   As a direct and proximate result of the continued sexual harassment and Annett – Logistics failure to stop it, Ann was constructively discharged from employment at Annett –

Logistics.

140.    As a direct and proximate result of Ann's constructive discharge, she was substantially injured, including but not limited to economic and emotional harms.

**WHEREFORE**, Ann requests that this Court enter judgment in her favor and against Annett - Logistics and enter an order granting the following relief:

A.    Declaring the foregoing conduct to retaliatory discharge;
B.    Awarding compensatory damages;
C.    Awarding punitive damages;
D.    Awarding reasonable attorney's fees and costs incurred in pursuing this claim; and
E.    Granting such further relief as this Court deems just and proper.

## COUNT VI
### Constructive Discharge
### by Adrienne against Annett – Logistics

141.    Adrienne restates and incorporates paragraphs 1 through 111 and 124 through 133 as though fully stated herein.

142.    Although Adrienne repeatedly complaint to Annett – Logistics about foregoing sexual harassment, it continued unabated.

143.    As a direct and proximate result of the foregoing sexual harassment, Adrienne resigned from Annett – Logistics.

144.    A reasonable person in Adrienne's position would have felt compelled to resign from employment at Annett – Logistics due the pervasive and severe sexual harassment taking place there.

145.    Adrienne's resignation from Annett – Logistics was the direct result of her gender and membership in a protected class.

146.    As a direct and proximate result of the continued sexual harassment and Annett – Logistics failure to stop it, Adrienne was constructively discharged from employment at Annett –

Logistics.

147.    As a direct and proximate result of Adrienne's constructive discharge, she was substantially injured, including but not limited to economic and emotional harms.

**WHEREFORE**, Adrienne requests that this Court enter judgment in her favor and against Annett - Logistics and enter an order granting the following relief:

A.    Declaring the foregoing conduct to constitute retaliatory discharge;
B.    Awarding compensatory damages;
C.    Awarding punitive damages;
D.    Awarding reasonable attorney's fees and costs incurred in pursuing this claim; and
E.    Granting such other relief as this Court deems just and proper.

## COUNT VII
### Negligent Supervision and Training
### by Plaintiffs against Annett - Logistics

148.    Plaintiffs restate and incorporate paragraphs 1 through 147 as though fully stated herein.

149.    Annett - Logistics owed a duty to Plaintiffs to properly supervise and train Patrick and other male employees in the Office.

150.    Annett - Logistics owed a duty to Plaintiffs to protect Plaintiffs from assault, battery, sexual harassment, retaliation, and other serious harms and imminent dangers in connection with their employment at the Office.

151.    Annett - Logistics owed a duty to Plaintiffs to terminate the employment of Annett - Logistics employees who engaged in assault, battery, egregious and systematic sexual harassment, and retaliation against those who reported that wrongful conduct.

152.    Annett - Logistics owed a duty to Plaintiffs to exercise reasonable care to train Patrick to communicate within the Office policies against assaults, batteries, sexual harassment, and retaliation: to enforce sexual harassment policies; to promptly and thoroughly investigate

direct and indirect complaints of sexual harassment; to monitor and supervise persons violating the policies prohibiting assaults, batteries, and sexual harassment; to hire and retain only employees who would not violate the prohibition against assaults, batteries, and sexual harassment; and to monitor to prevent retaliation for reporting wrongful conduct.

153.  Annett - Logistics breached it duties to Plaintiffs to ensure that Patrick was carrying out the duties described in the immediately preceding paragraph.

154.  Annett – Logistics breached its duties when it failed to train Patrick and other employees regarding implementing and enforcing an effective policy prohibiting sexual harassment.

155.  Annett - Logistics breached its duty when it failed to properly supervise Patrick, Robert, John, Eric, Brian P. and Brian S. to ensure that they were not engaging in assault, battery, systemic severe and pervasive sexual harassment, and retaliation.

156.  Patrick was directly and indirectly aware of the assaults, batteries, and sexual harassment because he was the Office manager, participated in the wrongful conduct, and witnessed much of the wrongful conduct committed by male employees.  Despite Patrick's awareness, he failed to investigate, failed to try to stop the wrongful conduct, and failed to discipline any of the persons engaging in the wrongful conduct perpetrated against Plaintiffs.

157.  Annett - Logistics had actual and constructive knowledge of the wrongful conduct occurring in the Office and occurring elsewhere but in connection with employment-related activities.  Despite Annett - Logistics' knowledge, it failed to take any corrective action until after Plaintiffs' respective employment at Annett - Logistics ended.  Corrective action at that point in time was untimely and ineffectual as to Plaintiffs.

158.  Annett - Logistics breached its duty when it failed to train Patrick and various other

male employees to avoid engaging in systemic severe and pervasive sexual harassment in the Office.

159.     Annett - Logistics breached its duty when it failed to train Patrick and various other male employees to refrain from engaging in assault in battery of Plaintiffs via unwanted touching of Plaintiffs' respective bodies.

160.     Annett - Logistics breached its duty when it failed to train Patrick and various other male employees to report systemic severe and pervasive sexual harassment in the Office.

161.     Annett - Logistics knew, or should have known, of the systemic severe and pervasive sexual harassment in the Office, including unwanted touching of Plaintiffs' respective bodies.

162.     Annett - Logistics knew, or should have known, that Patrick was particularly unfit to manage the Office because he repeatedly engaged in egregious sexual harassment that was directed at Plaintiffs and other women in the Office and repeatedly condoned egregious sexual harassment by his male subordinates.

163.     Annett - Logistics knew, or should have known, that Robert, John, Eric, Brian P., and Brian S. were particularly unfit to work in the Office because they repeatedly engaged in egregious sexual harassment that was directed at Plaintiffs and other women in the Office and failed to report any sexual harassment to Annett - Logistics' human resources department.

164.     The particular unfitness of Patrick, Robert, John, Eric, Brian P., and Brian S. created a danger of harm to Plaintiffs in the form of sexual harassment, retaliation, and emotional injuries.

165.     Annett - Logistics' failure to protect Plaintiffs from these harms was the direct and

proximate result of harm to Plaintiffs.

166.     Annett - Logistics' breaches of its duties to supervise and train directly resulted in harm to Plaintiffs because the lack of training and supervision created the hostile work environment in which Plaintiffs worked.  It was foreseeable to a reasonably prudent person that the lack of training and supervision would directly result in a hostile work environment. It was particularly foreseeable once the sexual harassment started and grew increasingly worse.

167.     As a direct and proximate result of Annett - Logistics' breaches, both Plaintiffs suffered substantial injuries, including but not limited to assault, battery, emotional distress, humiliation, anxiety, mental anguish and depression.

168.     Annett - Logistics' conduct involved gross negligence that was a wanton disregard for Plaintiffs' rights to be free from assault, battery and severe injuries occurring in the workplace that Annett - Logistics controlled.

**WHEREFORE**, Plaintiffs request that this Court enter judgment in her favor and against Annett - Logistics and enter an order granting the following relief:

A.     Awarding compensatory damages;
B.     Awarding punitive damages;
C.     Awarding costs incurred in pursuing this claim; and
D.     Granting such further relief as this Court deems just and proper.

**COUNT VIII**
**Intentional Infliction of Emotional Distress**
**by Ann against Annett - Logistics**

169.     Ann restates and incorporates paragraphs 1 through 62, 113 through 122, and 135 through 140 as though fully stated herein.

170.     Based on the foregoing allegations, Patrick, Robert, John, Eric, Brian P., and Brian S. engaged in extreme and outrageous conduct in the Office in connection with their employment

duties, during work hours, and within the scope of their employment.

171.    During the time period when the above-referenced conduct was occurring, Annett - Logistics knew or should have known that Patrick, Robert, John, Eric and Brian were engaged in egregious, pervasive and repetitive sexual harassment of Ann and retaliation against her.  Despite this actual or constructive knowledge, Annett - Logistics failed to conduct a timely or proper investigation of the harassment and retaliation.  As just one example of the grossly improper investigation that Annett - Logistics conducted, Annett - Logistics never interviewed Ann after she reported on March 28, 2017 the sexual harassment directly to Annett - Logistics' human resources director.  Ann sent the human resources director a follow-up e-mail in early April 2017 asking for Annett - Logistics to follow-up and still never received any communication from Annett - Logistics as part of any investigation.

172.    Annett - Logistics failed to limit contact between Ann and the persons engaged in the above-alleged wrongdoing.

173.    Annett - Logistics intended, or acted with recklessness, to cause Ann severe and extreme emotional distress when it failed to protect Ann from the foregoing wrongful conduct committed in the Office.

174.    Annett - Logistics' conduct constituted willful and wanton misconduct or grossly reckless conduct that ignored Ann's rights and well-being.

175.    As a direct and proximate result of the conduct of Annett - Logistics, Ann suffered severe emotional distress, mental anguish, anxiety and depression.

    **WHEREFORE**, Ann requests that this Court enter judgment in her favor and against

Annett - Logistics and enter an order granting the following relief:

A.  Awarding compensatory damages;
B.  Awarding punitive damages;
C.  Awarding costs incurred in pursuing this claim; and
D.  Granting such further relief as this Court deems just and proper.

## COUNT IX
### Intentional Infliction of Emotional Distress
### by Ann against Patrick

176.  Ann restates and incorporates paragraphs 1 through 62, 113 through 122, and 135 through 140 as though fully stated herein.

177.  Based on the foregoing, Patrick, as an agent of Annett - Logistics, engaged in extreme and outrageous conduct in the Office in connection with his employment duties during work hours and within the scope of his employment.

178.  Patrick intended, or acted with recklessness, to cause Ann severe emotional distress when he engaged in sexual harassment of Ann and retaliated against her.

179.  Patrick intended, or acted with recklessness, to cause Ann severe emotional distress when he failed to protect Ann from sexual harassment and retaliation committed in the office by Robert, John, Eric, Brian P., and Brian S.

180.  Patrick's conduct constituted willful and wanton misconduct or grossly reckless conduct that ignored Ann's rights and well-being.

181.  As a direct and proximate result of the conduct of Patrick, Ann suffered severe emotional distress, mental anguish, anxiety and depression.

**WHEREFORE**, Ann requests that this Court enter judgment in her favor and against

Patrick and enter an order granting the following relief:

    A.     Awarding compensatory damages;
    B.     Awarding punitive damages;
    C.     Awarding costs incurred in pursuing this claim; and
    D.     Granting such further relief as this Court deems just and proper.

## COUNT X
### Intentional Infliction of Emotional Distress
### by Adrienne against Annett - Logistics

182.    Adrienne restates and incorporates paragraphs 1 through 62, 124 through 133, and 142 through 147 as though fully stated herein.

183.    Based on the foregoing allegations, Patrick, Robert, John, and Eric engaged in extreme and outrageous conduct in the Office in connection with their employment duties, during work hours, and within the scope of their employment. Eric engaged in extreme and outrageous conduct outside of the Office but in connection with his employment duties, during work hours and within the scope of his employment.

184.    During the time period when the above-referenced conduct was occurring, Annett - Logistics knew or should have known that Patrick, Robert, John, and Eric. were engaged in egregious, pervasive and repetitive sexual harassment of Adrienne and retaliation against her. Despite this actual or constructive knowledge, Annett - Logistics failed to conduct any investigation of the harassment and retaliation.

185.    Annett - Logistics failed to limit contact between Adrienne and the persons engaged in the above-alleged wrongdoing, particularly Eric.

186.    Annett - Logistics intended, or acted with recklessness, to cause Adrienne severe and extreme emotional distress when it failed to protect Adrienne from the foregoing wrongful

conduct committed in the Office.

187.     Annett - Logistics' conduct constituted willful and wanton misconduct or grossly reckless conduct that ignored Adrienne's rights and well-being.

188.     As a direct and proximate result of the conduct of Annett - Logistics, Adrienne suffered severe emotional distress, mental anguish, anxiety and depression.

**WHEREFORE**, Adrienne requests that this Court enter judgment in her favor and against Annett - Logistics and enter an order granting the following relief:

A.     Awarding compensatory damages;
B.     Awarding punitive damages;
C.     Awarding costs incurred in pursuing this claim; and
D.     Granting such further relief as this Court deems just and proper.

## COUNT XI
### Intentional Infliction of Emotional Distress
### by Adrienne against Eric

189.     Adrienne restates and incorporates paragraphs 1 through 62, 124 through 133, and 142 through 147 as though fully stated herein.

190.     Based on the foregoing, Eric, as an agent of Annett - Logistics, engaged in extreme and outrageous conduct in the Office in connection with his employment duties during work hours and within the scope of his employment. Eric also engaged in extreme and outrageous conduct outside of the Office but in connection with his employment duties, during work hours and within the scope of his employment.

191.     Eric intended, or acted with recklessness, to cause Adrienne severe emotional distress when he engaged in extreme sexual harassment of Adrienne.

192.     Eric intended, or acted with recklessness, to cause Adrienne severe emotional

distress when he engaged in stalking-type conduct directed at Adrienne.

193.    Eric's conduct constituted willful and wanton misconduct or grossly reckless conduct that ignored Ann's rights and well-being.

194.    As a direct and proximate result of the conduct of Eric, Adrienne suffered severe emotional distress, mental anguish, anxiety and depression.

**WHEREFORE**, Adrienne requests that this Court enter judgment in her favor and against Eric and enter an order granting the following relief:

A.    Awarding compensatory damages;
B.    Awarding punitive damages;
C.    Awarding costs incurred in pursuing this claim; and
D.    Granting such further relief as this Court deems just and proper.

**Plaintiffs Demand a Trial By Jury for all Claims.**

ANN RUGGLES and ADRIENNE FEMALI,
Plaintiffs,

Dated: August 16, 2017                By:    /s/ Karl Leinberger
                                              One of Plaintiffs' Attorneys

Karl G. Leinberger (IL Atty. No. 6237537)
Paul Markoff
Markoff Leinberger LLC
134 N. LaSalle St., Ste. 1050
Chicago, IL  60602
312.726.4162 (p)
312.674.7272 (f)
karl@markleinlaw.com

Wade Joyner (IL Atty. No. 6199407)
Law Office of Wade Joyner
1058 Bristol Court
Wheaton, IL 60187
630.768.1042
wadejoynerlaw@gmail.com